# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY BROOKS, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO. 14-5506 |
| VALLEY DAY SCHOOL, : | |
| : | |
| Defendant. : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                       May 28, 2015

Currently pending before the Court is the Motion by Defendant Valley Day School ("Defendant") to Dismiss Plaintiff Jeffery Brooks ("Plaintiff")'s Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiff is an adult individual who resides in Levittown, Pennsylvania. (Second Am. Compl. ¶ 7.) Defendant is a private school for students with behavioral and emotional needs. (Id. ¶ 8.) Plaintiff was employed by Defendant for approximately twenty-four and a half years. (Id. ¶ 11.) Plaintiff was a Finance Director at the time he was terminated from his employment with Defendant. (Id. ¶ 12.)

Plaintiff has suffered, and continues to suffer, from various mental health impairments, including, but not limited to, depression and panic attacks. (Id. ¶ 13.) Plaintiff's mental health impairments are long-standing permanent conditions, despite the medications Plaintiff takes.

(Id.)  Plaintiff was formally diagnosed with his mental health conditions over twenty years ago, and has continually treated his conditions through the ongoing care of physicians and use of anti-depressant medications.  (Id. ¶ 14.)  Plaintiff's mental health impairments, at times, substantially limit his ability to perform major life activities, including but not limited to sleeping, engaging in social interaction, working, and brain function.  (Id. ¶ 15.)  Plaintiff experiences difficulty engaging in social settings when meeting new people or when encountering new environmental settings, and also experiences difficulty communicating, interacting, and adapting under those circumstances.  (Id. ¶ 16.)  Plaintiff also has difficulty falling and/or staying asleep, sometimes up to five days per week, as a result of his mental health conditions, which leaves him fatigued and unable to fully function for extended periods of time.  (Id. ¶ 17.)  Finally, Plaintiff experiences extreme difficulty focusing, concentrating, and processing information during flare-ups of his mental health conditions, which at times impacts his ability to work.  (Id. ¶ 18.)

During his employment with Defendant, Plaintiff informed Defendant's management of his disabilities and limitations.  (Id. ¶ 19.)  Towards the end of his employment, Plaintiff was working on a project involving an audit of the school lunch program ("the audit project").  (Id. ¶ 20.)  Due to "the nature of the project," as well as some personal issues occurring at home, Plaintiff began to have severe flare-ups of his disability, which often caused him to have panic attacks.  (Id.)  Plaintiff informed Defendant's management about his flare-ups and panic attacks, and requested that he be provided with some assistance with the audit project.  (Id. ¶ 21.)  Defendant's management, without engaging in any interactive process, refused to accommodate Plaintiff's request.  (Id.)

Sometime in May 2013, shortly after Plaintiff informed management that he was experiencing symptoms related to his disability, Plaintiff was called to a meeting with the Board

2

of Directors regarding the audit project. (Id. ¶ 22.) Prior to attending the meeting, Plaintiff asked his supervisor, Geoffrey Axe, whether he should inform the Board of Directors that his depression had recently been exacerbated. (Id. ¶ 23.) Mr. Axe told Plaintiff that he should not inform the Board of Directors because it would cause problems. (Id.) During the May 2013 meeting, Plaintiff was not reprimanded regarding his performance and was not threatened or told that he was going to be terminated. (Id. ¶ 24.)

Around the end of May 2013, Plaintiff requested, and was approved for, FMLA leave for appendix and liver problems. (Id. ¶ 25.) From that time until approximately the beginning of July 2013, Plaintiff took a medical leave of absence to care for and treat those conditions. (Id. ¶ 26.) Plaintiff returned to work from medical leave in July 2013. (Id. ¶ 27.) Upon returning to work, and shortly after informing Defendant's management about his exacerbated disability and panic attacks,[1] Plaintiff was threatened with discipline, ostracized, and spoken to "abruptly" by Defendant's management. (Id.) Approximately one week after he returned from his FMLA leave in July 2013, Plaintiff was called into a meeting with Mr. Axe, Plaintiff's supervisor, and Harlan Joseph, a member of Defendant's Board of Directors, to discuss the audit project. (Id. ¶ 28.) During that meeting, "Plaintiff was lead [sic] to believe that he may be issued discipline for his work but would not be terminated." (Id.) Also during that meeting, Plaintiff "again" informed Mr. Axe and Mr. Joseph that his depression had recently become exacerbated and that he was having panic attacks while working on the audit project. (Id. ¶ 29.)

On or about August 28, 2013, Plaintiff was terminated from his employment with Defendant without any explanation or reason. (Id. ¶ 30.) Plaintiff believes and avers that he was

---

[1] It is not entirely clear from the Second Amended Complaint whether Plaintiff informed management about the exacerbation of his disability for a second time, or whether Plaintiff considers July 2013 to be "shortly after" he informed Defendant's management in May 2013 as described in Paragraph 21 of the Second Amended Complaint.

3

terminated because of his health conditions, requests for accommodations, and/or in retaliation for requesting and utilizing FMLA leave for his serious health conditions. (Id. ¶ 31.)

Plaintiff filed a Complaint in this case on September 25, 2014, and filed an Amended Complaint on November 21, 2014. On December 8, 2014, Defendant filed a Motion to Dismiss the Amended Complaint, which this Court denied as moot on January 5, 2015, in light of the Second Amended Complaint that Plaintiff filed on December 22, 2014. In the Second Amended Complaint, Plaintiff set forth claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. (Second Am. Compl. ¶ 1.) Defendant filed a Motion to Dismiss the Second Amended Complaint on January 8, 2015. Plaintiff responded on January 28, 2015. The Motion to Dismiss is now ripe for judicial consideration.

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Having considered the Second Amended Complaint and the parties' briefs, the Court finds that (1) Plaintiff has sufficiently pled both FMLA interference and retaliation claims, and will deny Defendant's Motion to Dismiss Plaintiff's FMLA interference claim; (2) Plaintiff has conceded that he is not seeking punitive or emotional distress/pain and suffering compensatory damages for his FMLA claim, and Defendant's Motion to Dismiss that aspect of Plaintiff's claims is granted; and (3) Defendant's Motion to Dismiss Plaintiff's request for a jury trial and compensatory and punitive damages for his ADAA claim is premature and is therefore denied without prejudice.

### A. <u>Violations of the Family and Medical Leave Act[2]</u>

Plaintiff alleges that Defendant committed the following interference and retaliation violations of the FMLA: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) terminating Plaintiff by considering Plaintiff's FMLA needs; (3) terminating Plaintiff to dissuade Plaintiff and/or other employees from utilizing FMLA leave; and (4) terminating Plaintiff to prevent him from taking further FMLA-qualifying leave in the future. (Second Am. Compl. ¶ 44.)

"In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)). The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny

---

[2] Plaintiff alleges that all of the statutory requirements for bringing an FMLA claim have been met. (See Second Am. Compl. ¶¶ 39–43.)

the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To assert an FMLA interference claim, "the employee need not show that he was treated differently than others." Callison, 430 F.3d at 119. "Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Id. at 119–20. Ultimately, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120.

"To prove an interference claim, it is the plaintiff's burden to show (1) he was an eligible employee under the FMLA, (2) defendant was an employer subject to the requirements of the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave notice to the defendant of his intention to take FMLA leave, and (5) the defendant was denied benefits to which he was entitled under the FMLA." Lombardo v. Air Prods. & Chems., Inc., No. Civ.A.05-1120, 2006 WL 1892677, at *3 (E.D. Pa. July 7, 2006) (citation omitted). "To assert a retaliation claim, a plaintiff must demonstrate that: (1) he or she is protected under the FMLA, (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights. Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508 (3d Cir. 2009) (internal citations and quotations omitted).

According to Defendant, because Plaintiff alleged that he was permitted to take FMLA leave from some point in May 2013 until some time in early July 2013, but did not allege that Defendant denied him any FMLA benefits to which he was entitled, he has not stated an FMLA interference claim. (See Def.'s Mem. Supp. Mot. Dismiss 4 (citing Second Amended Compl. ¶¶ 27–28).) Plaintiff argues that he has adequately pled an FMLA interference claim because he alleged that Defendant terminated him to dissuade him and/or other employees from utilizing FMLA leave, and also to prevent him from taking additional FMLA-qualifying leave in the

future.  (See Pl.'s Resp. Opp'n Mot. Dismiss 9 (citing Second Am. Compl. ¶ 44).)  Plaintiff also alleges that he gave notice of his possible need to use FMLA leave in the future during his meeting with Mr. Axe and Mr. Joseph in July 2013, after he returned from taking FMLA leave.  (Id. (citing Second Am. Compl. ¶¶ 28–29).)  Plaintiff argues that these allegations are distinct from his allegation that he was terminated in retaliation for actually using FMLA leave.  (See Pl.'s Resp. Opp'n Mot. Dismiss 10–11.)

Plaintiff's allegations are sufficient to state both an interference claim as well as a retaliation claim.  The United States Court of Appeals for the Third Circuit has held "that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."  Erdman, 582 F.3d at 509 (3d Cir. 2009).[3]  Accordingly, Plaintiff may proceed with both his interference and his retaliation claims under the FMLA, and Defendant's Motion to Dismiss the FMLA interference claim is denied.

## B. Damages Sought Pursuant to Plaintiff's FMLA Claim

Defendant argues that, to the extent Plaintiff seeks punitive and compensatory damages, including for emotional distress, such relief is not permissible for the alleged FMLA violations described in Count Two and those damages claims must therefore be dismissed.  (Def.'s Mem. Supp. Mot. Dismiss 5 (citing Second Am. Compl., WHEREFORE Clause, ¶¶ B, C).)  Plaintiff asserts that he does not seek to recover any impermissible emotional distress or punitive damages for his FMLA claims.  (Pl.'s Resp. Opp'n Mot. Dismiss 11.)  In light of Plaintiff's concession that he does not seek either punitive damages or compensatory damages for pain and suffering for his FMLA claims (id.), this aspect of Defendant's Motion is granted.

---

[3] Defendant cites district court cases in which courts found that plaintiffs could not bring both interference and retaliation claims under the FMLA, but the factual circumstances in those cases are distinguishable from Plaintiff's factual allegations in the Second Amended Complaint.  (See Def.'s Mem. Supp. Mot. Dismiss 4–5.)

8

## C. Plaintiff's Requested Remedies and Damages Pursuant to the ADAA Claim

In Count One of the Second Amended Complaint, Plaintiff alleges that, in violation of the ADAA, Defendant's management treated him in a discriminatory and disparate manner because of his disabilities and need for accommodations. (Second Am. Compl. ¶ 34.) Plaintiff alleges that he requested accommodations, but that Defendant refused to accommodate him without first engaging in any interactive process. (Id. ¶ 35.) Plaintiff further alleges that Defendant terminated him because of 1) his known health conditions; 2) his perceived health conditions, 3) his record of impairment; and/or 4) in retaliation for requesting accommodations. (Id. ¶36.)

Defendant argues that Plaintiff is not entitled to compensatory damages, punitive damages, or a jury trial under the retaliation provisions of the ADAA. (Def.'s Mem. Supp. Mot. Dismiss 6.) Plaintiff responds that, in light of the fact that the Third Circuit has not yet reached the issue of whether a jury trial or such damages are permissible in an ADAA retaliation claim,[4] the Court should deny Defendant's Motion without prejudice. (See Pl.'s Resp. Opp'n Mot. Dismiss 12–13.) Plaintiff asserts further that, in addition to the absence of binding case law on the subject, the "issue is premature at this early stage of litigation, and is a decision more appropriately suited for ruling after the summary judgment stage and prior to trial in this matter – when available damages are ripe for discussion." (Id. at 13.) Finally, Plaintiff notes that Defendant has not moved to dismiss his numerous other claims which do permit a trial by jury, in which case a determination on the availability of a jury trial on this claim is irrelevant. (Id.) The Court finds Plaintiff's arguments persuasive and, accordingly, this aspect of Defendant's Motion to Dismiss is denied without prejudice. Cf. Leone v. N. Jersey Orthopaedic Specialists,

---

[4] See, e.g., Shellenberger v. Summit Bancorp., Inc., No. Civ.A.99-5001, 2006 WL 1531792, at *4 (E.D. Pa. June 2, 2006) (noting that the Third Circuit has not yet addressed the issue and discussing the approach taken in other federal circuits and district courts).

P.A., No. Civ.A.11-3957, 2012 WL 1535198, at *7 (D.N.J. Apr. 27, 2012) ("Because it is unclear at this point in the litigation whether Plaintiff can adequately plead a 'disability' under the ADA, or whether Plaintiff can adequately plead that the related discrimination rose to the level of malice or recklessness, the Court need not, nor will it, decide whether particular damages attach to a plausibly pleaded claim under the ADA. Therefore, the Court denies Defendant's request, at this stage, to dismiss Plaintiff's claims for compensatory and punitive damages for retaliation under the ADA.").

## IV. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss is denied with respect to Plaintiff's FMLA interference claim, granted as to the available damages for Plaintiff's FMLA claims, and denied without prejudice as to the availability of a jury trial and certain types of damages for Plaintiff's ADAA claim.

An appropriate Order follows.