**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| JEFFERY BROOKS, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  14-5506 |
| VALLEY DAY SCHOOL, | : | |
| | : | |
| Defendant. | : | |


**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                                    August 11, 2015


  Currently pending before the Court is Plaintiff Jeffery Brooks's Motion to Dismiss Defendant Valley Day School's Counterclaims.  For the following reasons, the Motion is granted in part and denied in part.

## I.  FACTUAL BACKGROUND

  According to the facts set forth in the Second Amended Complaint, Plaintiff Jeffery Brooks was employed with Defendant Valley Day School—a private school for students with behavioral and emotional needs—for twenty-four and a half years.  (Second Am. Compl. ¶¶ 8, 11.)  At the time of his termination, Plaintiff served as Finance Director.  (<u>Id.</u> ¶ 12.)  Plaintiff has and continues to suffer from various mental health impairments, including depression and panic attacks, which were diagnosed over two decades ago.  (<u>Id.</u> ¶¶ 13–14.)  During his employment with Defendant, Plaintiff apprised Defendant's management of these disabilities and their accompanying limitations.  (<u>Id.</u> ¶ 19.)

Towards the end of Plaintiff's employment, Plaintiff was working on a project involving an audit of the school lunch program, when he began to experience severe flare-ups of his disability resulting in panic attacks.  (Id. ¶ 20.)  Plaintiff informed Defendant's management about these flare-ups and requested some assistance with the project.  (Id. ¶ 21.)  Defendant's management allegedly refused to accommodate his request.  (Id.)  Shortly thereafter, in May 2013, Plaintiff was called to a meeting with the Board of Directors regarding this project.  (Id. ¶ 22.)  Before attending the meeting, Plaintiff asked his supervisor whether he should inform the Board that his depression had recently become exacerbated, and his supervisor said he should not since it would "just cause problems."  (Id. ¶ 23.)  During the meeting, Plaintiff was not reprimanded at all regarding his performance and was never once threatened or told that he was going to be terminated.  (Id. ¶ 24.)

At the end of May 2013, Plaintiff requested and was approved for leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611, et seq., for a serious health condition that he was having with his appendix and liver.  (Id. ¶ 25.)  Plaintiff then took medical leave from the end of May 2013 to the beginning of July 2013 to treat these conditions.  (Id. ¶ 26.)  Upon his return to work, Plaintiff was threatened with discipline, ostracized, and spoken to abruptly by Defendant's management.  (Id. ¶ 27.)  Approximately one week after returning from leave, Plaintiff was called into a meeting with his supervisor and a member of the Board of Directors, wherein they discussed Plaintiff's project and led Plaintiff to believe that he may be issued discipline for his work, but not terminated.  (Id. ¶ 28.)  At that time, Plaintiff again indicated that his depression had recently become exacerbated and that he was having panic attacks while working on the project.  (Id. ¶ 29.)  On or about August 28, 2013, Plaintiff was terminated from

2

Defendant's employ without any explanation or reason.  (Id. ¶ 30.)

Plaintiff initiated suit on September 25, 2014, and filed an Amended Complaint on November 21, 2014.  On December 22, 2014, Plaintiff filed a Second Amended Complaint, setting forth claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.

Defendant filed an Answer with Affirmative Defenses and Counterclaims on June 17, 2015.  In its Counterclaim Complaint, Defendant asserted that when Plaintiff was hired as its Finance Director in June 2007, he entered into a written Employee Contract "to faithfully perform such duties and tasks as are required by this position to the satisfaction of VDS." (Countercl. Compl. ¶¶ 5–7.)  As part of his job duties, he was charged with ensuring that Defendant met all State and Federal guidelines and regulations as they related to funding reimbursement, and to develop and file with the Pennsylvania Department of Education, Division of Food ("PDE") the required documents to ensure Defendant received funding for participation in the National School Lunch Program ("NSLP").  (Id. ¶¶ 10–11.)  In January or February 2013, however, Defendant learned that Plaintiff did not promptly develop and file with PDE a corrective action plan to ensure that Defendant was in full compliance with concerns identified and communicated to him from PDE so as to ensure restoration of funding for Defendant's participation in the NSLP.  (Id. ¶ 12.)  Defendant repeatedly instructed Plaintiff to file the required corrective action plans, but he personally failed to comply with the corrective actions required by PDE.  (Id. ¶¶ 13–14.)  Defendant asserts that Plaintiff deceived Defendant's Board of Directors, at first by not informing them about the ongoing loss of funding revenue, and then in

3

misrepresenting what he actually did to comply with PDE directives.  (Id. ¶ 15.)

According to the Counterclaim Complaint, Defendant did not fully learn of Plaintiff's neglect of duties until June 2013, when PDE specifically informed Board Member Harlan Joseph about the situation.  (Id. ¶ 16.)  When Mr. Joseph confronted Plaintiff, Plaintiff indicated that he had nothing to say in his defense other than he was dealing with family issues.  (Id. ¶ 17.)  As a result of Plaintiff's neglect of his duties and breach of his employee contract, Defendant lost approximately $52,000 in reimbursement monies from PDE.  (Id. ¶ 18.)  Subsequent to Plaintiff's termination in August 2013, Defendant also learned that Plaintiff failed to file the necessary paperwork with the Internal Revenue Service to keep Valley Day Enterprises—an organization affiliated with Defendant that providing programming, related services, and assistance to those that qualified—designated as a non-profit charitable organization.  (Id. ¶¶ 19–21.)  It was Plaintiff's duty and job responsibility to ensure that such paperwork was timely filed.  (Id. ¶ 22.)

Defendant's Counterclaim alleges a state law breach of contract claim against Plaintiff for failing to develop and file with PDE the required documents to ensure that Defendant received funding for participation in the National School Lunch Program.  (Id. ¶ 26.)  In addition, it asserts breach of contract for Plaintiff's failure to file the necessary paperwork with the Internal Revenue Service to keep Valley Day Enterprises's designation as a non-profit charitable organization. (Id. ¶ 28.)

On July 8, 2015, Plaintiff filed the current Motion to Dismiss Defendant's Counterclaim. Defendant responded on July 22, 2015, making this Motion ripe for judicial consideration.

## II.      STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or a case.  Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006).  When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist."  Id. at 302 n.3.  There are two types of Rule 12(b)(1) motions.  A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction.  Id.; Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue thereby causing the case to fall outside the court's jurisdiction. Mortenson, 549 F.2d at 891.  In such a case, "no presumptive truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  Id.

## III.     DISCUSSION

Plaintiff now contends that the Court must dismiss Defendant's Counterclaim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  He asserts that the Court has original jurisdiction over his claims, which allege violations of federal statutes, but that Defendant's Counterclaim raises only issues of state law.  As such, the sole basis for the Court's exercise of jurisdiction over the Counterclaim is supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiff argues, however, that the exercise of supplemental jurisdiction over the counterclaim is not appropriate because it is not "part of the same case or controversy under Article III of the United States Constitution," as is required pursuant to 28 U.S.C. § 1367(a). Defendant responds that the Court properly has jurisdiction over the Counterclaim.

5

To resolve this dispute, the Court must initially determine whether these alleged actions are compulsory counterclaims under Fed. R. Civ. P. 13(a) or, instead, are permissive counterclaims analyzed pursuant to Fed. R. Civ. P. 13(b).  Sun Nat'l Bank v. Rapid Circuits, Inc., No. Civ.A.11-432, 2011 WL 1899179, at *2–3  (E.D. Pa. May 9, 2011).  "Compulsory" counterclaims are, in part, claims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a)(1)(A).  As described by the Third Circuit Court of Appeals:

> For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." . . . The concept of a "logical relationship" has been viewed liberally to promote judicial economy.  Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." . . . Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties. . . . In short, the objective of Rule 13(a) is to promote judicial economy, so the term "transaction or occurrence" is construed generously to further this purpose.

Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389–90 (3d Cir. 2002) (internal citations and footnotes omitted); see also Vukich v. Nationwide Mut. Ins. Co., 68 F. App'x 317, 319 (3d Cir. 2003) (citing Transamerica Occidental, 292 F.3d at 389 (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978))).  The Third Circuit has re-emphasized that "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts."  Vukich, 68 F. App'x at 319 (citing Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961)).  If a defendant fails to bring a compulsory counterclaim, he is barred from asserting that claim in a future proceeding.  Fed. R. Civ. P. 13(a); Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469 n.1 (1974).

6

"Generally, the mere fact that state law counterclaims arise from the same employment relationship as the original claims over which the court has subject matter jurisdiction is insufficient to render the counterclaims compulsory. . . . Some greater connection is necessary." Stewart v. Lamar Adver. of Penn LLC, Nos. Civ.A.03-2914, 03-2690, 03-5293, 2004 WL 90078, at *2 (E.D. Pa. Jan. 14, 2004). Repeatedly, courts have declined to dismiss state law counterclaims in an employment discrimination suit where the counterclaims go to an element of the plaintiff's discrimination suit. See, e.g., id. (finding that counterclaims of fraud, unjust enrichment, and breach of duty of loyalty against employee for abandoning her position arise out of the same transaction and occurrence as employee's claim for employment discrimination resulting from her alleged termination); Nwoga v. Cmty. Council for Mental Health & Retardation, Inc, No. Civ.A.12-5393, 2013 WL 705917, at *10 (E.D. Pa. Feb. 27, 2013) (holding that defendant employer's indemnification counterclaim against employee had a logical relationship to the plaintiff employee's § 1981 claim alleging retaliation for racial discrimination complaints); Plebani v. Bucks Cnty. Rescue Emergency Med. Servs., No. Civ.A.03-5816, 2004 WL 2244543, at *3 (E.D. Pa. Sept. 30, 2004) (finding, in a suit alleging employment discrimination, that the employer defendant's counterclaim for on-the-job misconduct was compulsory because it was logically related to the plaintiff's discrimination); Glass v. IDS Fin. Servs., 778 F. Supp. 1029, 1063 (D. Minn. 1991) (holding, in an ADEA claim by employees against employer, that employer's counterclaims for amount of employees' unpaid debt as a result of chargebacks arose out of the same transaction or occurrence as the employees' claims because the same evidence would support or refute both the claims and the counterclaims).

In the present case, Plaintiff asserts the he was terminated based on his disability and for his use of FMLA leave. In order to prove his case, he will have to first establish, among other

things, that he has suffered an "adverse employment decision as a result of discrimination." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citing Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002) (further citations omitted)).  If Plaintiff succeeds, the burden will shift to Defendant articulate some legitimate, nondiscriminatory reason for the adverse employment action.   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–803 (1973).  If Defendant meets that burden of production, Plaintiff will then bear the burden of proving that a discriminatory animus was the real reason for the adverse employment action at issue.  Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Defendant's counterclaim that Plaintiff breached his employment contract by failing to file the documentation required for Defendant's participation in the NSLP bears an abundantly logical relationship to Plaintiff's discrimination claim.  Defendant alleges that Plaintiff failed to perform his required duties, which not only breached his contract, but was the very basis for his termination.  Proof of the counterclaim will involve proof of the same underlying facts necessary for Defendant to establish a legitimate, non-discriminatory reason for Plaintiff's termination.  In turn, rebuttal of the counterclaim will require the same evidence necessary for Plaintiff to prove that Defendant's asserted non-discriminatory reason was nothing more than pretext. Accordingly, beyond the mere existence of an employment relationship, there is a connection between Plaintiff's claim of disability discrimination on one hand, and Defendant's defense and counterclaim asserting that Plaintiff failed to properly perform his required job duties on the other.  To require that these claims be litigated separately—one in state court and one in federal court—would result in substantial duplication of effort and time by the parties and the courts. Given both this logical relationship and considerations of judicial economy, the Court finds this

portion of Defendant's counterclaim to be compulsory and declines to dismiss it.[1]

      The same cannot be said for the portion of Defendant's counterclaim alleging that Plaintiff breached his employment contract by failing to file the necessary paperwork with the IRS.  Defendant concedes that it did not discover the facts underlying this claim until after it terminated Plaintiff.  As such, Defendant would not be able to argue that this allegation was one of the reasons Plaintiff was terminated.  Defendant argues that this claim "logically 'grows out' of the underlying breach of contract claim involving the school lunch program" because Plaintiff's conduct occurred prior to his termination and "[h]ad [Defendant] known about it prior to his termination, it would surely been another articulated reason to terminate the Plaintiff." (Def.'s Resp. Opp'n Mot. to Dismiss 6.)  This argument is incorrect.  Proof of this claim will

---

[1]  Plaintiff's list of cases for the proposition that "[d]istrict courts faced with similar improper counterclaims have not hesitated to dismiss such counterclaims" is inapposite as many of these cases were outside the employment context and none involved a claim and counterclaim that had a logical relationship that extended beyond the mere existence of an employment relationship.  (Pl.'s Mem. Supp. Mot. to Dismiss 8–9.)  See Glevicky v. Cmty. College of Allegheny Cnty., 52 F. App'x 588, 589 (3d Cir. 2002) (not addressing district court's order dismissing counterclaim for lack of jurisdiction or, in the alternative, for failure to state a claim because order was not a final order from which appeal could be taken); Williams v. Long, 558 F. Supp. 2d 601, 603–06 (D. Md. 2008) (holding that defendant's counterclaims for breach of contract, breach of fiduciary duty, and invasion of privacy had no relationship to plaintiff's claims for breach of the FLSA and state wage payment and collection laws); Transitional Hosps. Corp. of La. Inc. v. DBL N. Am., Inc., No. Civ.A.01-2201, 2002 WL 27767, at *2–3 (E.D. La. Jan. 8, 2002) (holding that counterclaim for overpayment had no common nucleus of operative facts with the plaintiff's bankruptcy case); Ayres v. Nat'l Credit Mgmt. Corp., No. Civ.A.90-5535, 1991 WL 66845, at *1–2 (E.D. Pa. Apr. 25, 1991) (defendant debt collector's counterclaim for payment of debt did not share a logical relationship for the plaintiff's claim under the Fair Debt Collection Practices Act); Peterson v. United Accounts, 638 F.2d 1134, 1127 (8th Cir. 1981) (same); Gutshall v. Bailey & Assoc., No. Civ.A.90-20182, 1991 WL 166963, at *2 (N.D. Ill. Feb. 11, 1991) (same); Leatherwood v. Univ. Bus. Serv. Co., 115 F.R.D. 48, 49–50 (W.D.N.Y. 1987) (same).
      As for the cases cited on pages six and seven of Plaintiff's brief, the Court recognizes that Plaintiff merely copied citations from Stewart, 2004 WL 90078 at *2.  For the same reason the court in Stewart found those cases distinguishable from the case before it, this Court likewise does not find those cases relevant or persuasive.

require inquiry into facts that are completely unrelated to whether Plaintiff was terminated as a result of his disability or for reasons related to his job performance.  Therefore, this claim is permissive and, as it arises out of state law with no independent federal jurisdictional basis, the Court dismisses it.

An appropriate order follows.